# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

RUDD EQUIPMENT COMPANY, INC.,        **Plaintiff**

v.            **Case No. 3:14-cv-703-DJH-CHL**

JOHN DEERE CONSTRUCTION &
FORESTRY COMPANY,         **Defendant**

### Memorandum Opinion and Order

The Court held an evidentiary hearing on April 10 and 11, 2017. During that hearing, Rudd Equipment Co. ("Rudd") moved to admit two video depositions. John Deere Construction and Forestry Company ("Deere") objected to their admission on relevance grounds. The Court reserved its rulings on their admissibility for *in camera* review.

For the reasons below, the Court will deny Rudd's motions to admit the video depositions. Likewise, the Court will deny Rudd's motion to admit the exhibits tendered with the video depositions and Deere's alternative motion to admit the remainder of the exhibits.

## I.  Background

The procedural history of this case is complex. The Court will detail only what is necessary for understanding the parties' evidentiary dispute.

Rudd is an independent dealer of Hitachi construction equipment. Deere is its supplier of Hitachi construction equipment. Deere seeks to terminate the dealer agreement with Rudd. In an arbitration proceeding, the parties are litigating whether the dealer agreement will terminate.

On March 2, 2015, the Court signed an agreed order tendered by the parties. (DN 44.) In short, the agreed order seeks to maintain the status quo between the parties until the arbitration proceeding ends. (*See id.*, #1590.) The agreed order says, "Deere will continue to treat Rudd as

1

a dealer in accordance with the status quo under [the dealer agreement] as such status quo existed prior to the October 2, 2014 termination, except as follows … ." (*Id.* (brackets added).)

On January 4, 2017, Rudd filed a motion to enforce the agreed order. (DN 80.) In general, Rudd argues that Deere violated the agreed order by requiring that Rudd submit Hitachi Purchase Orders ("Hitachi POs") signed by the customer in order to receive discounts for selling Hitachi equipment. (*Id.*, #2078.) Rudd also argues that Deere violated the agreed order by withholding discounts for previously sold equipment and by threatening to debit Rudd's account for past sales for which Rudd did not provide Hitachi POs with customer signatures. (*Id.*)

Deere responds that requiring Rudd to submit Hitachi POs with customer signatures in order to obtain discounts does not violate the agreed order. (DN 93, #2351.) Rather, Deere argues that the agreed order requires Deere to treat Rudd like other Hitachi dealers, and other Hitachi dealers must submit Hitachi POs with customer signatures. (*Id.*, 2356 – 58.)

Rudd moves to admit the video depositions of Erik Frazier and Ken Gerondale. (DN 109, #2723.) Frazier and Gerondale are employees of Construction Machinery Industrial, LLC ("CMI"). The Court will refer to Frazier and Gerondale's depositions as the "CMI depositions." CMI is an independent dealer of Hitachi equipment in Alaska. Deere is its distributor.

Rudd moves to admit exhibits from Gerondale's deposition as Plaintiff's Exhibits 25, 26, 27, and 28 and one exhibit from Frazier's deposition as Plaintiff's Exhibit 29. (DN 109, #2729.)

Deere objects to the CMI depositions and Rudd's proposed exhibits on relevance grounds. (DN 109, #2730.) As an alternative, if the Court is inclined to admit the CMI depositions, Deere moves to admit the remainder of the exhibits. (*Id.*; DN 106 #2561 – 62.) After the hearing, Deere emailed the Court and withdrew its motion to admit what is referred to

in the hearing transcript as Defendant's Exhibits 25, 26, 27, 28, and 29. (*See* DN 106, #2561 – 62.) Thus, Deere seeks to admit Defendant's Exhibits 24, and 30 – 35. (*Id.*, #2562.)

### A. Erik Frazier's Deposition

Frazier is CMI's IT manager and equipment manager. On direct examination, Frazier testified that during 2014, 2015, and 2016, the "majority" of Hitachi PO forms were filled out by CMI employees, then the customer "when we can arrange it." (08:37.23 – 08:44.27.) He said that to his knowledge, CMI had received no complaints from Deere about the fact that CMI was signing the Hitachi POs on behalf of customers. (09:37.22 – 09:51.6.) He also testified that to his knowledge, Deere had never withheld a discount based on CMI's handling of the Hitachi POs, nor had Deere ever threatened to charge back a previously-paid discount based on CMI's handling of the Hitachi POs. (10:49.19 – 11:24.21.)

On cross-examination, Frazier testified that since the beginning of 2017, CMI now considers it a "priority" that the customer signs the Hitachi PO. (28:22.18 – 29:06.26.)

### B. Ken Gerondale's Deposition

Gerondale is CMI's president. On direct, Gerondale testified that CMI employees signed most of the Hitachi POs and then submitted them to Deere, and that as far as he knew, that process was acceptable to Deere. (09:28.19 – 09:59.10.) In January 2017, CMI did a self-audit and discovered that it had been using a 2003 Hitachi PO form. (12:47.24 – 13:00.4.) Also in January 2017, Gerondale told Deere that CMI employees had been signing Hitachi PO forms. (23:02.2 – 23:14.16.) To his knowledge, in 2014, 2015, or 2016, Deere had never withheld or charged back a discount based on how CMI filled out the Hitachi PO forms. (24:27.24.)

On cross-examination, Gerondale testified that once he realized CMI employees were signing Hitachi POs on behalf of customers, CMI intended to go back to its customers from 2016

and have them sign the forms. (01:01:17.20 – 01:01:27.14.) Gerondale said, "I definitely recall not getting a response from anybody" at Deere. (23:20.11 – 23:31.15.) After the audit, CMI now gets a customer's signature on the Hitachi PO, if possible. (38:24.11 – 38:36.11.)

On redirect, Gerondale testified that he did not feel that CMI needed permission from customers to sign Hitachi POs on their behalf. (01:10:51.20.) Also, it tended to confuse customers when CMI employees asked them to sign Hitachi POs. (01:12:22.5 – 01:12:24.8.) He could not give a definitive answer as to when CMI employees began signing Hitachi POs on behalf of customers. (01:13:21.21 – 01:13:44.3.)

## II.     Evidentiary Standard

Federal Rules of Evidence 401 and 402 govern relevance. Rule 401 says:

Evidence is relevant if:

   (a) it has any tendency to make a fact more or less probable than it would be without
       the evidence; and
   (b) the fact is of consequence in determining the action.

Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. "Relevance is defined by the evidence having the tendency to make the existence of a disputed fact more probable or less probable." *United States v. Gibbs*, 797 F.3d 416, 422 (6th Cir. 2015) (internal quotation marks omitted). Whether evidence is relevant is within the Court's discretion. *Id.* "Relevancy is a threshold inquiry." *Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990). The introducing party bears the burden of establishing relevancy. *Id.*

## III.     Discussion

Deere argues that its "long-standing practice of requiring all dealers, including Rudd, to submit Hitachi Purchase Orders signed by the customer is not a violation of the Agreed Order, and Deere is therefore opposed to the Motion." (DN 93, #2351.) Rather, Deere argues that the agreed order requires Deere to treat Rudd like other Hitachi dealers, and other Hitachi dealers

must submit Hitachi POs with customer signatures. (*Id.*, #2356 – 58.) Additionally, Deere argues that the "Dealer Terms Schedules have at all times since at least January 2007 required that each dealer submit a Hitachi Purchase Order signed and dated by the customer when Hitachi equipment is sold to a retail customer." (*Id.*, #2356.)

Rudd argues that the video depositions are relevant as a response to Deere's argument that the status quo required Deere to treat Rudd like other dealers. (DN 109, #2724.) Rudd points to Deere's opening statement in which Deere argued that the Court needed to decide if "Rudd is going to be like all other dealers." (*Id.*) Rudd also points to Deere employee Todd Thorson's testimony in which Thorson suggested that having customers sign Hitachi POs is "what all other dealers do all the time." (*Id.*, #2724 – 25.)

Rudd argues that the video depositions demonstrate that when CMI told Deere it was signing Hitachi POs, instead of having customers sign Hitachi POs, Deere said, "Don't worry about it." (*Id.*, #2725.) Moreover, Rudd argues that Deere did not require CMI to go back to its customers and ask them to sign Hitachi POs, much less threaten to charge back CMI's discounts or seek to terminate their distribution agreement based on CMI's failure to obtain Hitachi POs with customer signatures. (*Id.*)

Deere argues that Rudd has based its motion to enforce the agreed order on an argument that it is a unique dealer who is not required to act like other Hitachi dealers. (*Id.*, #2726.) Deere argues that the CMI employees do not provide any similar testimony that CMI is a unique dealer. (*Id.*, #2727.) Therefore, Deere argues, how CMI completes the Hitachi POs is irrelevant in determining whether Deere violated the agreed order. (*Id.*)

## IV.    Analysis

It is helpful to begin by discussing what the CMI depositions do not provide. The CMI depositions shed no light on the relationship between Rudd and Deere. The CMI depositions likewise shed no light on defining what the status quo was *between Rudd and Deere* before October 2, 2014. Nor do the CMI depositions shed any light on whether Deere violated the agreed order's requirement to maintain the status quo as between Rudd and Deere. Ultimately, the CMI depositions provide no support for Rudd's argument in its motion that the status quo between the parties before October 2, 2014 was that Rudd generally signed Hitachi POs on behalf of customers and that Deere knew of and consented to this practice.

What the CMI depositions do provide is a window into Deere's relationship with another independent dealer who, like Rudd, admitted to signing Hitachi POs on behalf of customers. That window suggests that although CMI and Rudd engaged in similar conduct, Deere treated CMI and Rudd's alleged transgressions very differently.

Specifically, the CMI depositions suggest that when CMI admitted to signing the Hitachi POs on behalf of customers, Deere asked CMI to have customers sign the Hitachi POs going forward, as it has asked Rudd to do. CMI agreed to submit Hitachi POs with customer signatures going forward. Rudd on the other hand objects to any requirement that it submit Hitachi POs with customer signatures going forward. Additionally, once CMI told Deere that it had been signing the Hitachi POs for its customers, Deere did not ask CMI to go back to its 2016 customers for their signatures; nor did Deere tell CMI that it would charge back any previously paid discounts for transactions for which CMI could not provide customer signatures on a Hitachi PO form. In contrast, Deere has asked Rudd to resubmit the Hitachi POs from September 2014 to October 2016 with customer signatures, and has notified Rudd that it will

charge back the previously-paid discounts for any of those transactions for which Rudd does not provide Hitachi POs with customer signatures.

Unlike Rudd, CMI's employees did not testify regarding their dealer agreement, much less testify that CMI's dealer agreement is unique and precludes Deere from requiring CMI to submit Hitachi POs with customer signatures. Indeed, Frazier testified that the Hitachi Terms Schedule requires CMI to get a customer signature on the Hitachi PO, and that CMI wants to follow the Terms Schedule. (29:26.20 – 30:23.1.) Gerondale was not familiar with the Terms Schedule. (32:26.9 – 32:35.7.) Frazier had not read the dealer agreement between CMI and Deere, and he did not know whether the dealer agreement required CMI to follow the Hitachi Terms Schedule. (30:31-14 –30:42.8.; 30:49.2 – 30:50.5.) It does not appear that Gerondale was asked whether he had read CMI's dealer agreement.

Neither party couches its arguments in Rule 401's language. As the proponent of the CMI depositions, Rudd has the burden to show their relevancy. Rudd has not met this burden.

Under Rule 401, the Court determines whether a disputed fact is of consequence in determining the action. Thus, the Court must determine whether Deere's apparently lenient treatment of CMI—for conduct that appears to mirror Rudd's conduct— is of consequence in determining whether Deere violated the agreed order by requiring Rudd to submit Hitachi POs with customer signatures.

On the one hand, Deere's apparently lenient treatment of CMI appears to undermine its argument that Deere needs all dealers, including Rudd, to submit Hitachi POs with customer signatures. Deere argued in its opening statement that "every Hitachi dealer" has submitted Hitachi POs signed by the customer. (DN 105, #2441; *see also, id.* at #2437 ("the Deere side thought that status quo meant ordinary course of business, as it is with Rudd and every other

independent Hitachi dealer…").)  And, Thorson, a Deere employee, testified that "all Hitachi dealers" must follow the Terms Schedule.  (DN 108, #2614.)

On the other hand, Rudd has not shown that Deere's apparently lenient treatment of CMI is of consequence in determining what is at issue here: what the status quo was between Rudd and Deere under the agreed order.  Rudd argues that it is a unique dealer with a unique dealer agreement.  (*See* DN 80-1, #2079 ("Rudd's unique dealer status stems in large part from Rudd's having very different terms in its Dealer Agreements with Deere than those in Deere's typical distribution agreement.").)  Rudd also argues that its practice of signing Hitachi POs on behalf of customers is a unique practice, even if other dealers deal with Hitachi POs differently.  (*Id.* ("As explained below, Deere has recognized that Rudd is a unique dealer in many ways, including the manner in which it completes those forms.").)  Given these arguments, Rudd has not shown how Deere's relationship with CMI, or any other dealer for that matter, is of consequence in determining what the status quo was between Rudd and Deere before October 2, 2014.  Rudd has not shown how the CMI depositions provide any support for its argument that it is a unique dealer with a unique dealer agreement and that even if other dealers submit Hitachi POs with customer signatures, Rudd is not required to do so.  Deere's relationship with CMI, and its treatment of CMI two and a half years after the operative status quo date, provides no additional context for understanding what the status quo was between Rudd and Deere before October 2, 2014.

Additionally, although the CMI depositions do tend to rebut Deere's argument that it treats all dealers this way, Rudd has not shown that Deere's apparently lenient treatment of CMI is of consequence in determining what is at issue here: whether Deere violated the agreed order. The agreed order binds Deere and Rudd.  CMI is not a party to this action or the agreed order.

Rudd has not shown how the CMI depositions provide any support for its argument that Deere violated the agreed order between Deere and Rudd.  To put it another way, how Deere reacted when CMI admitted to submitting Hitachi POs without customer signatures has no bearing on whether Deere violated the agreed order between Rudd and Deere by reacting the way it did vis-à-vis Rudd.

Further, even if the CMI depositions themselves were relevant, Rudd has not shown that its proposed exhibits tendered with the CMI depositions are relevant.  For example, Rudd moves to admit Exhibit 3 from Gerondale's deposition (referred to in the hearing transcript as Plaintiff's Exhibit 27).  That document is not discussed in the proffered portion of Gerondale's deposition.

Finally, Deere's most recent notice of termination cites Rudd's failure to submit Hitachi POs with customer signatures as a new basis for terminating the dealer agreement.  (*See* DN 93, #2352 n.4.)  Importantly, the merits of that notice are not before the Court.  If that decision were up to the Court, the CMI depositions may well have been relevant.  That decision is for the arbitration panel.  The Court will only decide whether Deere violated the agreed order by requiring Rudd to submit Hitachi POs with customer signatures.  The CMI depositions are irrelevant to that decision.

Altogether, Deere's apparently lenient treatment of CMI is not of consequence in determining whether Deere violated the agreed order.  Rudd has not shown that the CMI depositions are relevant.  Therefore, the CMI depositions are irrelevant, and thus, inadmissible.

## Order

The Court **SUSTAINS** Deere's objections to the video deposition of Erik Frazier and Ken Gerondale.  The Court **DENIES** Rudd's motions to admit the video depositions of Erik Frazier and Ken Gerondale.  The Court **DENIES** Rudd's motion to admit Plaintiff's Exhibits 25,

26, 27, 28, and 29. The Court **DENIES as moot** Deere's alternative motion to admit Defendant's Exhibits 24 and 30 – 35.